IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCIS J. TROSTLE, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 05-343J |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) ) JUDGE GIBSON ) ) ) |
| Defendant. | ) |

## Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof (Document Nos. 13-14, 19-20). This Court has jurisdiction of this matter pursuant to 42 U.S.C. § 405(g).

Francis J. Trostle, Jr., (hereinafter "Plaintiff") protectively filed an application for Disability Insurance Benefits (hereinafter "DIB") under Title II of the Social Security Act on December 12, 2002, alleging disability as of August 10, 1990, due to a dislocated shoulder, back pain and seizures. R. p. 69. This application was initially denied on October 1, 2003. R. p. 118. On October 13, 2003, the Plaintiff filed a request for a hearing. R. p. 125. An administrative hearing was held in Altoona, Pennsylvania, on June 30, 2004, before Administrative Law Judge Raymond J. Zadzilko (hereinafter "ALJ"). R. p. 82. The Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. pp. 88-108. Dr. Morton Morris, an impartial vocational expert, was present for the entire hearing and testified before its conclusion. R. pp. 109-112.

On October 21, 2004, the ALJ issued a decision which was unfavorable to the Plaintiff. R. pp. 66-76. The ALJ concluded that the Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability, and that he suffered from "degenerative disc disease of the lumbar spine,

1

residuals from a shoulder injury," and a "seizure disorder." R. p. 75. Although these impairments were deemed to be "severe" for purposes of 20 C.F.R. § 404.1520(a)(4)(ii), it was determined that they did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments). R. pp. 70, 75. The ALJ further determined that, prior to the last date of his insured status, the Plaintiff "retained the ability to perform light exertional activity, with only occasional stooping, kneeling, crouching, crawling and bending, with no balancing, and with the need to avoid ladders, ropes, scaffolds, unprotected heights, and moving/dangerous machinery." R. p. 74. Based on this residual functional capacity assessment, the ALJ concluded that the Plaintiff was unable to perform his past relevant work as a welder. R. pp. 74, 76. Nonetheless, the ALJ determined that the Plaintiff could work as a ticket taker, envelope sorter, injection mold operator, assembler or buffer. R. p. 74. Dr. Morris' testimony established that these jobs existed in significant numbers in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. pp. 110-112. Consequently, the Plaintiff was not found to be under a disability within the meaning of the Social Security Act. R. p. 76.

On June 23, 2005, the Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner of Social Security in this case. R. pp. 4-7. The Plaintiff filed a complaint in this matter on August 30, 2005. Jo Anne Barnhart, Commissioner of Social Security (hereinafter "Commissioner"), filed an answer on November 14, 2005. The Plaintiff and the Commissioner filed cross-motions for summary judgment on February 23, 2006, and May 1, 2006, respectively. After a thorough review of the record, the Court is convinced that the decision of the Commissioner should be affirmed.

A district court's review of the administrative determinations of the Commissioner is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review, the Third Circuit has stated:

> "This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion. See *id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and deference must be given to the Commissioner's findings unless there is an absence of substantial evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to DIB or Supplemental Security Income benefits (hereinafter "SSI"), the Commissioner us es a five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step process as follows:

> "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the

3

> claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c)."

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003) (footnotes omitted).

The Plaintiff makes four arguments in support of his motion for summary judgment. Before proceeding to the merits of these arguments, however, the Court must address a preliminary matter raised by the Commissioner. The Commissioner contends that "[t]he issue of [the] Plaintiff's disability status through his last date insured has, in fact, already been determined with administrative finality as [the] Plaintiff was previously found to be not disabled under an application filed on March 31, 1996, after a hearing on July 24, 1997." Br. for Defendant, n. 1. She further contends that the Appeals Council denied the Plaintiff's request for review, and that the Plaintiff took no further action on the application. Br. for Defendant, n. 1. The portion of the record cited by the Commissioner does not refer specifically to the dates of the prior application and hearing, but it does indicate that the Appeals Council denied the Plaintiff's request for review on August 31, 1998. R. p. 160. The date of the first hearing is listed on a separate page of the record. R. p. 150. Presumably, the prior decision would normally be administratively final through the Plaintiff's insured eligibility period, given that the last day of that period was December 31, 1995. R. p. 160. Nevertheless, the ALJ made no mention of the prior decision, or the preclusive effect thereof, when he issued his decision regarding the instant application. R. pp. 69-76.

In *Kane v. Heckler*, 776 F.2d 1130 (3d Cir. 1985), the U.S. Court of Appeals for the Third Circuit explained that "where the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits, the agency has effectively reopened the prior claims and waived application of res judicata." *Kane*, 776 F.2d at 1132. The Court of Appeals also noted, in *Coup v. Heckler*, 834 F.2d 313 (3d Cir. 1987), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002), that it is not

4

the role of the courts "to determine whether the [Commissioner] had good cause for reopening, for in that respect [her] decision is not judicially reviewable." *Coup*, 834 F.2d at 317. The instant case presents a somewhat different question than was presented in *Coup* because, in this case, it is not clear that reopening would be proper under 20 C.F.R. § 404.988. The Commissioner has discretion to reopen a prior decision for any reason within twelve months of "the date of the notice of the initial determination." 20 C.F.R. § 404.988(a). "The [Commissioner] has discretion to reopen prior applications within four years of notice of the initial determination for 'good cause.'" *Coup*, 834 F.2d at 317; 20 C.F.R. § 404.988(b). "Beyond four years, a claim may be reopened on narrower grounds." *Coup*, 834 F.2d at 317; 20 C.F.R. § 404.988(c). In *Coup*, it was clear that the claimant's subsequent application had been filed within four years of the "initial determination," thereby leaving the case within the discretionary time period applicable to 20 C.F.R. § 404.988(b). *Coup*, 834 F.2d at 317. The instant case is different because the Plaintiff's December 12, 2002, application postdated the Appeals Council's action with regard to his prior application by more than four years. R. pp. 69, 160. Consequently, it appears as though the reopening of the Plaintiff's case would not have been proper under 20 C.F.R. §§ 404.988(a) or 404.988(b). Furthermore, the narrow grounds supporting a potential reopening under 20 C.F.R. § 404.988(c) do not appear to be present in this case.

In *Tobak v. Apfel*, 195 F.3d 183 (3d Cir. 1999), the Court of Appeals stated as follows:

> "*Res judicata* principles apply to administrative as well as judicial adjudications. *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421-22, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). However, *res judicata* may only be properly applied to preclude a subsequent claim for disability benefits where the 'same' claimant has filed a previous application based on the 'same' issues and where such prior determination has become final by virtue of administrative or judicial action. 20 C.F.R. § 404.957(c)(1); *Purter v. Heckler*, 771 F.2d 682, 691 (3d Cir. 1985). Further, even if *res judicata* may properly be applied, the Commissioner has discretion whether to reopen a prior disability benefits application for 'good cause' within four years of the date of notice of the initial determination. 20 C.F.R. §§ 404.988(b), 404.989. We have held that a reopening will be found when there is an administrative review of the entire record and a decision is reached on the merits of the claim." *See Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir. 1987)."

*Tobak*, 195 F.3d at 186. This language, taken in context, does not address the question of whether a

5

*de facto* reopening can be found where it appears that the regulations would not authorize an explicit reopening. In *Purter v. Heckler*, 771 F.2d 682 (3d Cir. 1985), the Court of Appeals found a *de facto* reopening of the claimant's prior claim only after concluding that "good cause" for such a reopening existed. *Purter*, 771 F.2d at 695-696. Nonetheless, in an unpublished opinion, the Court of Appeals backed away from that portion of *Purter*. In *Kaszer v. Massanari*, 40 Fed.Appx. 686 (3d Cir. 2002), it was determined that, in order to find that a *de facto* reopening has occurred, a reviewing court need not "find that the agency would have been able to reopen the application if it wanted to[.]" *Kaszer*, 40 Fed.Appx. at 691. In that case, the Court of Appeals concluded that there was no need to determine whether the Commissioner had "good cause" for reopening the case within the meaning of 20 C.F.R. § 404.988(b). *Kaszer*, 40 Fed.Appx. at 691.

In this case, it appears that a *de facto* reopening may have occurred after the expiration of the four-year time period applicable under 20 C.F.R. § 404.988(b), which distinguishes this case from the other cases. In *Kaszer*, the Court of Appeals determined that the expiration of the one-year time period applicable under 20 C.F.R. § 404.988(a) foreclosed a determination that the claimant's earlier claim had been reopened under that regulation. *Kaszer*, 40 Fed.Appx. at 690. The Court proceeded to determine that a *de facto* reopening had occurred under 20 C.F.R. § 404.988(b) *within the applicable time period*, and that the Court had no duty to determine whether the "good cause" requirement of the regulation had been met. *Kaszer*, 40 Fed.Appx. at 692. It is not clear from these cases how the *res judicata* issue in the present case should be resolved.

In any event, the Commissioner has not presented enough information on the *res judicata* issue to enable the Court to apply the doctrine in this case. Although the Commissioner contends that the Plaintiff's disability status through the last date he was insured has already been determined with administrative finality, the only evidence of that in the record are the documents which indicate that a prior claim was denied after a hearing on July 24, 1997, and that a request for review was denied by the Appeals Council on August 31, 1998. R. pp. 150, 160. The Commissioner does not provide additional evidence of the prior application, nor does she establish that the Plaintiff's "previous application was based on the 'same' issues[.]" *Tobak*, 195 F.3d at 186. The cursory references to the prior

6

determination in the Commissioner's brief do not provide a sufficient showing that *res judicata* should be applied in this case. Br. for Defendant pp. 1, n. 1, 25. As the Court of Appeals explained in *Purter*, "[t]he ease and efficiency of *res judicata* as a means of quickly avoiding an evaluation of the merits of a plaintiff's claim does not imply that the decision to apply the doctrine should be either facile or hasty." *Purter*, 771 F.2d at 690. *Res judicata* is an affirmative defense. By failing to make even a minimal showing that the prior application was based on the same issues as the present one, the Commissioner has waived this defense. This remains the case even if, as a practical matter, reopening of the prior determination was not proper under 20 C.F.R. § 404.988.

The ALJ addressed the Plaintiff's application on the merits without even mentioning the prior determination. R. pp. 69-76. The Appeals Council denied the Plaintiff's request for review. R. pp. 4-7. Had the Appeals Council reviewed the case and properly dismissed the Plaintiff's request for a hearing on *res judicata* grounds, this Court would not have jurisdiction in this case. *Tobak*, 195 F.3d at 186-188. This is because the U.S. Supreme Court, in *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), determined that 42 U.S.C. § 405(g) did not authorize jurisdiction in the District Court unless a prior administrative hearing had been held. *Califano*, 430 U.S. at 107-109, 97 S.Ct. at 985-986, 51 L.Ed.2d at 201-202. Nevertheless, a hearing was held in this case, a determination was made on the merits, and the Appeals Council did not disturb that determination. Therefore, jurisdiction in this Court is proper under 42 U.S.C. § 405(g), and the Court can proceed to address the merits of the Plaintiff's case.[1]

The Plaintiff's first argument is that the ALJ erred in concluding that the Plaintiff's impairments did not meet or medically equal a listed impairment. Br. for Plaintiff pp. 5-7.[2] This contention is

---

[1] Although the Commissioner's contention that the Plaintiff's disability status through his last date insured has "already been determined with administrative finality" does not purport to challenge this Court's jurisdiction directly, issues related to subject matter jurisdiction can be raised *sua sponte*, and a federal court cannot decide the merits of a case unless it is satisfied that jurisdiction is proper under Article III of the U.S. Constitution and the applicable jurisdictional statutes enacted by Congress. *Kontrick v. Ryan*, 540 U.S. 443, 455-456, 124 S.Ct. 906, 915-916, 157 L.Ed.2d 867, 879-880 (2004).

[2] The Plaintiff's brief does not contain page numbers. The citation to specific pages in the Plaintiff's brief are consistent with the page numbers of the document appearing on the CM/ECF docketing system.

7

wholly without merit. The only argument that the Plaintiff makes with regard to the third step of the sequential evaluation process is that the record establishes the existence of disabling medical conditions. Br. for Plaintiff pp. 5-7. He asserts that he "meets or approximates [Listing] 1.04 with his physical limitations, and [Listings] 12.04 and/or 12.06 regarding his depression and anxiety." Br. for Plaintiff p. 5. Even assuming that to be true, the Plaintiff's argument does not carry the day. As the U.S. Supreme Court declared in *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990), "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531, 110 S.Ct. at 892, 107 L.Ed.2d at 980. "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531, 110 S.Ct. at 891, 107 L.Ed.2d at 980. It is insufficient for a claimant to assert, as the Plaintiff does, that he "meets or approximates" a listing with regard to his *limitations*. Br. for Plaintiff p. 5. At the third step of the sequential evaluation process, it is incumbent upon the claimant to show that his impairments *meet all of the criteria for a specific listed impairment*. The Plaintiff has clearly failed to do so in the instant case.

Notwithstanding the Plaintiff's contention to the contrary, the ALJ adequately explained why the Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ specifically mentioned "Listing 1.00, dealing with disorders of the musculoskeletal system, and Listing 11.00, dealing with disorders of the neurological system." R. p. 70. He further stated that "the objective medical evidence of record [did] not contain the objective signs, symptoms, or findings, nor the degree of functional restriction, necessary for the claimant's impairments, considered singly or in combination, to have met or equaled in severity any section of the aforesaid listings, or any section of any other listing contained within [the Listing of Impairments]." R. p. 70. It is true that the ALJ did not specifically refer to each of the three listings specified in the Plaintiff's brief. Under *Burnett v. Commissioner of Social Security*, 220 F.3d 112 (3d Cir. 2000), it is the ALJ's responsibility to identify the listings applicable in the Plaintiff's case, and to explain why those listings are not met or medically equaled.

*Burnett*, 220 F.3d at 119-120. Nonetheless, as the Court of Appeals explained in *Jones v. Barnhart*, 364 F.3d 501 (3d Cir. 2004), "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. As noted earlier, the Plaintiff has made no showing that his impairments met or *medically equaled* one of the listed impairments identified in his brief. Therefore, there is no reason why *Burnett* required the ALJ to address them specifically. The ALJ clearly addressed the listings that he believed to be relevant. *Burnett* requires nothing more where, as here, there has been no showing by the Plaintiff that he met or medically equaled a listing not specifically mentioned in the ALJ's opinion.

In his second argument, the Plaintiff contends that the ALJ erred in discounting his allegations regarding debilitating pain and limitations as being not fully credible and inconsistent with the clinical evidence in the record. Br. for Plaintiff pp. 7-9. Specifically, he relies on *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993), for the proposition that "pain itself may be disabling and support a claim for disability benefits." Br. for Plaintiff p. 8. The Plaintiff's argument, however, clearly misses the point. Since he did not establish that his impairments met or medically equaled a listed impairment, the Plaintiff could not have established that he was disabled solely on the basis of a medical condition. As the Court of Appeals explained in *Kuzmin v. Schweiker*, 714 F.2d 1233 (3d Cir. 1983), there is "a distinction between the issue of the existence of a medical condition and the issue of the existence of statutory disability." *Kuzmin*, 714 F.2d at 1237. The fact that the Plaintiff was able to demonstrate, at the administrative level, that he suffered from a potentially disabling medical condition does not mean that he was able to establish the existence of statutory disability. Whether pain *may* be disabling is inconsequential. It was incumbent upon the Plaintiff to show that pain was disabling *in his case*. He failed to do so.

It is, of course, true that the ALJ had a duty to give serious consideration to the Plaintiff's allegations of pain. *Mason*, 994 F.2d at 1067-1068. In this case, it is obvious that the ALJ did so. Two full pages of the ALJ's opinion were devoted to a detailed analysis of the Plaintiff's medical records,

9

including those related to his treatment for pain. R. pp. 71-72. The ALJ relied specifically on Exhibit B-3F, which consisted of a report by Dr. Jack D. Smith, who evaluated the Plaintiff in connection with his subjective complaints in February, 1993. R. pp. 72, 186-188. Dr. Smith opined that, with a successful fusion, the Plaintiff could perform medium, light, or sedentary work. R. p. 188. The ALJ also made reference to Exhibit B-4F, which was a letter from a treating physician. R. pp. 72, 203. In that letter, Dr. Joseph A. Basile suggested that the Plaintiff had been engaging in symptom magnification. R. p. 203. Given the mandate from Congress that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive," the Court has no mandate to re-weigh the evidence in the record. The Plaintiff's contentions about the ALJ's treatment of his subjective complaints amount to nothing more than a plea to the Court for a *de novo* revisitation of the underlying administrative determination. This is something that the Court cannot do. The ALJ's opinion included a lengthy discussion about the Plaintiff's pain allegations, and the Plaintiff's assertion that the ALJ failed to fully consider these allegations is wholly without merit. Br. for Plaintiff pp. 7-9; R. pp. 71-72.

In his third argument, the Plaintiff contends that the ALJ erred in making his residual functional capacity assessment. Br. for Plaintiff pp. 9-11. The Plaintiff's argument here, too, requires a leap from a finding that impairments existed to a further finding that statutory disability existed. Such a leap is not warranted. As the Commissioner points out, "[t]he ALJ accommodated [the] Plaintiff's functional limitations supported by the record by restricting him to light work and sedentary work subject to several limitations." Br. for Defendant p. 16.

In the beginning of his brief, the Plaintiff calls the Court's attention to a September 12, 1997, notation indicating that Dr. Basile found him to be permanently disabled as of that date. Br. for Plaintiff p. 4; R. p. 192. Nevertheless, "a statement by a plaintiff's treating physician supporting an assertion that [he] is 'disabled' or 'unable to work' is not dispositive of the issue." *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994). 20 C.F.R. § 404.1527(e)(1) reserves the determination of whether a claimant is statutorily disabled to the Commissioner. Generally speaking, an ALJ cannot reject a treating physician's opinion without providing some indication of his reasons for concluding that other evidence

in the record outweighs that opinion. *Fargnoli v. Massanari*, 247 F.3d 34, 43-44 (3d Cir. 2001). It is true that the ALJ in the instant case made no specific reference to Dr. Basile's September 12, 1997, finding that the Plaintiff was disabled. Nevertheless, as the Commissioner emphasizes in her brief, Dr. Basile's note was written twenty months after the expiration of the Plaintiff's insured eligibility period. Br. for Defendant p. 20. While treatment notes postdating the period of time at issue may be relevant for purposes of determining whether the Plaintiff was disabled during that period, the mere failure of the ALJ to mention this particular notation in his opinion does not entitle the Plaintiff to a remand in this case. The ALJ's meticulous examination of the Plaintiff's medical history appropriately focused on the period of time at issue, which was from August 10, 1990, to December 31, 1995. R. pp. 71-73.

In making his residual functional capacity assessment, the ALJ relied on an assessment of the Plaintiff's capabilities made by a state agency medical consultant. R. p. 73. This assessment form was completed on September 3, 2003. R. pp. 309-316. The consultant concluded that, during the period of time in question, the Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand or walk for up to six hours per day, and sit for up to six hours per day. R. p. 310. The consultant also determined that the Plaintiff had unlimited pushing and pulling capabilities and no manipulative, visual, communicative or environmental limitations. R. pp. 310-313. The only postural limitation noted was that the Plaintiff could engage in only occasional stooping. R. p. 311. The Plaintiff was deemed to be capable of frequent climbing, balancing, kneeling, crouching and crawling. R. p. 311.

The ALJ also referred to Dr. Smith's February 1, 1993, observation that the Plaintiff could potentially be rehabilitated to do medium, light, or sedentary work. R. pp. 186-188; R. p. 73. This observation, of course, was based the assumption that the Plaintiff's fusion was successful. R. p. 188. As the ALJ noted, however, later treatment notes indicated that the fusion was taking. R. pp. 72, 198. Under these circumstances, it is clear that the ALJ adequately supported his determination of the Plaintiff's residual functional capacity.

It is worthy of note that Dr. Morris testified about the existence of sedentary jobs that someone with the Plaintiff's residual functional capacity could perform. R. p. 111. These jobs included small parts tester, television monitor, hand packer and simple assembly positions. R. p. 111. The ALJ

11

specifically pointed out that Dr. Morris had been "able to identify a wide range of jobs at the sedentary exertional level that the hypothetical person could perform." R. p. 74. This Court cannot affirm the decision of the Commissioner on the basis of findings different from those adopted by the ALJ at the administrative level. *Fargnoli*, 247 F.3d at 44, n. 7. Nonetheless, the ALJ expressly provided this alternative rationale for concluding that there were jobs existing in significant numbers in the national economy that someone with the Plaintiff's residual functional capacity could perform. Therefore, it is not clear that the Plaintiff could prevail at this stage even if he were able to show that the ALJ erred in determining that he was capable of light work. Since the Court rejects the Plaintiff's argument anyway, further inquiry regarding the ALJ's alternative rationale is unnecessary.

The ALJ did reject some of the Plaintiff's proposed limitations, "including the need to lie on a couch with a pillow, the need for limited grasping and fingering," and the need for breaks in addition to those which would normally be afforded to someone engaged in competitive employment. R. p. 74. Dr. Morris testified that someone who took ten-minute breaks on an hourly basis would not be able to "hold a full-time job in the competitive market," and that none of the jobs described in his testimony would permit an employee to "lay on a couch with a pillow behind his back." R. p. 112. This testimony, however, does not undercut the Commissioner's argument that her decision is supported by substantial evidence. The ALJ was not required to accept every limitation *alleged* by the Plaintiff. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Since there was conflicting evidence in the record, the ALJ was free to reject these additional limitations. *Rutherford*, 399 F.3d at 554-555.

In his fourth and final argument, the Plaintiff contends that the ALJ failed to adequately consider the cumulative effect of the Plaintiff's impairments throughout the sequential evaluation process. This argument is refuted by the record. At the second step of the process, the ALJ determined that, during the period of time at issue, the Plaintiff had suffered from "degenerative disc disease of the lumbar spine, residuals of a shoulder injury, and a history of seizure disorder." R. p. 70. These impairments were all deemed to be "severe" for purposes of 20 C.F.R. § 404.1520(a)(4)(ii). In his opinion, the ALJ considered "the limitations resulting from all medically determinable impairments, including any symptom-related limitations." R. p. 70. The Plaintiff's shoulder problems, back surgery and seizure

disorder were meticulously evaluated by the ALJ. R. pp. 71-73. As the Commissioner points out, the Plaintiff's repetitive arguments "consist in great part of lengthy quotations from cases without application of the quoted material to the facts of the case before the Court." Br. for Defendant p. 16. The Plaintiff's cursory complaints regarding the alleged inadequacy of the ALJ's evaluation simply do not reflect the reality of what the record reveals.

Accordingly, the Court must deny the Plaintiff's Motion for Summary Judgment (Document No. 13) and grant the Commissioner's Motion for Summary Judgment (Document No. 19).

An appropriate Order follows.


AND NOW, this 5th day of July, 2006, this matter coming before the Court on the parties' cross-motions for summary judgment, IT IS HEREBY ORDERED THAT: 1) the Plaintiff's Motion for Summary Judgment (Document No. 13) is DENIED; and 2) the Defendant's Motion for Summary Judgment (Document No. 19) is GRANTED.

BY THE COURT:

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE

cc:   J. Kirk Kling, Esq.
      John J. Valkovci, Jr., AUSA

13